Last case of Vargas, Lysette Vargas, individually and in her capacity as Administrator of the estate versus the City of Philadelphia at all. Mr. Hockenberry. Thank you, Your Honor. I would request three minutes of rebuttal time. That request will be granted. Thank you. May it please the Court, my name is James Hockenberry. I represent the plaintiff below, Lysette Vargas. The District Court below erred in granting summary judgment when there were multiple disputed material facts, especially when construed in light most favorable to the plaintiff, as to all of the claims, including the state law false imprisonment claim, the Monell claim, and the Fourth and Fourteenth Amendment claims. May I ask a question about your claims, Mr. Hockenberry? Yes, Your Honor. There is some question about what you argued below, whether or not there was an argument that Ms. Vargas was seized when the officers refused to allow her to approach her daughter. That appears to be what was asserted below, right? You wouldn't let me approach my daughter. But is that the only thing that was argued below as to seizure? Below the issue before the Court was whether Ms. Vargas and her daughter, Ms. Gonzalez, were seized at all. Now, on appeal, the city has conceded that there has been a seizure. Well, I'm sorry, I'm not being very clear. Let me try this again. I understand your briefing before us to include an argument that when they drove up in the patrol car and they sort of blocked off the exit of the car Ms. Vargas and Ms. Gonzalez were in, that that was itself a seizure. But I'm not sure, the record doesn't really indicate that that was argued to be a seizure when you were in front of Judge O'Neill. Am I right about that? I don't believe that it was explicitly argued. It was certainly in the complaint and all of those facts were before the Court. The fact that the police cruiser blocked in the car. Sure, but recognizing that we have to deal with arguments here that were made below, if you never argued that the blocking below was in fact a seizure, is it fair for us to take that up and consider that? Or should we be focusing strictly on the assertion that it was a seizure when they told Ms. Vargas to stay away from her daughter and a seizure when they took in effect control of Ms. Gonzalez's body? Three things, Your Honor. I do believe it's fair because all of those facts were abundantly clear before the Court. The second thing is the seizure has been conceded on appeal by the city, so I don't believe that that issue is even any longer before the Court. Well, is the question just whether there was a seizure or is the question whether it was an unreasonable seizure? So the question before the Court, now that the city has conceded that there is a seizure, is whether it was a reasonable seizure and whether it was a reasonable seizure turns on a general... And you're going to argue that both were unreasonable seizures, both the blockage of the car and the refusal to let Ms. Vargas go to her daughter, that both of those were unreasonable seizures or just the blocking of the car? Both were unreasonable seizures. There are two types of seizures for the Fourth Amendment, physical force and a show of authority. The use of the car, an extension of the person, if you will, was a physical seizure. It was also a show of authority by... Now, why was that an unreasonable seizure given the circumstances, right? I mean, as I understand it, the dispatcher tells the officers there's someone screaming. Unfortunately, as I understand it, the dispatcher doesn't relate that there's a medical emergency. So why is that unreasonable? Why did that amount to an unreasonable seizure? Your Honor, it amounts to an unreasonable seizure immediately upon arrival for a multitude of factors. Number one, the officers themselves acknowledged that there was no criminal activity afoot. They had no reasonable suspicion or probable cause to believe that there was. They see a minor child, unconscious, falling out of a car or lying on the sidewalk. The record's not clear. They have multiple people tell... They don't see that when they drive up. They see that when they alight and then... Correct, Your Honor. And as they alight, they're told by multiple people over and over again that this is a medical emergency. So putting all of these factors together, it's very clear that it becomes unreasonable instantaneously. Instantaneously? Really? Seriously? There's absolutely no time gap at all? Well, instantaneously not in a quantum mechanics type of argument, but within seconds it becomes clear to the officers because time matters, right? I mean, you even seem to try to gain seconds when you say, well, according to when they hit the button in their car to show they were on the scene, maybe they didn't really hit it right away because maybe they were running tags first. It looks like you're trying to gain every second you can to lengthen out the time. So timing does matter, right? Timing does matter, but it becomes abundantly clear as they acknowledge it themselves. I won't say instantaneously, but almost immediately upon arrival. Why is it more reasonable for the officers to say, gang, transport her to the nearest hospital yourselves, or gang, wait around. We not only hear a siren, but we believe the EMTs are on their way. Yeah, it's more reasonable because any reasonable person, much less a reasonably trained officer, knows that a human being not breathing will die in a relatively short period of time. And would any reasonable human being conclude that an ambulance within earshot is a worse bet for saving somebody's life than people untrained as drivers of emergency vehicles trying to get to the hospital on their own? Because that's the choice they've got, right? The choice they're presented with is, I let these people drive her to the hospital, or I have these people wait because I hear an ambulance right now with an EMT on the way. Why would you put them in the back of the cruiser? Your Honor, to answer that question, it's not their choice to make. When the police show up, when they decide that we're not going to render aid and we're going to stand there, they certainly can't then use their judgment to impose upon medical decision-making rights of others. Don't they have a community caretaking function? Hasn't the law recognized the community caretaking function where the police are allowed, even mistakenly, to exercise some judgment about what's going to be in the best interest and safety of an individual who's in distress? Yes, but the minute that they appear and they decide that they're not going to render aid, the community caretaking function is over. When you say they're not going to render aid, how is it the conclusion that they're not going to render aid? Is it not a reasonable conclusion from the record that they thought they were rendering aid by saying, this is coming, it's going to be better, that's the aid, we're going to wait for this rescue to occur. That's not rendering aid? It's no affirmative act. I mean, to stay back passively and say that's rendering aid, I've not been able to find any cure. You're not staying back passively, and that's, in fact, your argument. Your assertion is they didn't stay back passively. They prevented us from doing what we wanted to do. They stood in our way, and they weren't passive. So you can't really have it both ways. Either they were actively involved in doing something you didn't want, that is making a judgment that you think they shouldn't have made, or it's got to be they were doing it because they thought they were right, or they were doing it and they shouldn't have, but not they weren't doing it. How do you get that they weren't doing anything? Well, they were passive with regard to rendering aid themselves. They then step back and say we're not going to render aid, and you can't either for your own child. But that's not what they did. It's not as if they didn't say you can't have access to Ms. Gonzalez. It's not as though the question was can we do mouth-to-mouth or whatever. I mean, they didn't prevent them. They just said, hey, wait for the ambulance. And I have a broader question to ask you on this very notion. Is what you're asking us to do then to come up with a doctrine where if there's some equivocation as to what can be done between a parent's view and a police officer's view, that if the police officer prevails, we will essentially have to judge, well, that was unreasonable for them to exercise this community caretaking function in this instance because it disagreed with the parent, and hence a constitutional violation must have happened. And we're going to give the parent a cause of action? Every time that happens? Because that's going to be difficult, right? Because as soon as an officer leaves the precinct, he or she is making decisions throughout the day that affect the well-being of the community. So every time there's a conflict, you're going to want a decision to be made at that point in time. Was that reasonable for them to say, I'll do the mouth-to-mouth, or I'll help set this, or I'll step in in this way, or I'll step back? I'm wondering where this is going logically. Two things. I believe that those issues bear on the Monell claim and failure to train as well. But to answer your question directly, Your Honor, I'm asking the court not to create a doctrine, but to allow these facts to be submitted to a fact-finder. Not for this court to conclude that their behavior was unreasonable, but that a reasonable jury under these facts could conclude that. Could conclude that it's conscience-shocking. Exactly, Your Honor. Could conclude that it's a deliberate indifference for the Monell claim. Could conclude that it's conscience-shocking. Could conclude that it's an unreasonable seizure. So it's got to be, in order for us to come to that conclusion, am I correct in presuming that it's got to be that the decision to say to Ms. Vargas, wait for the ambulance, that that's got to be, in the view of a jury, an unreasonable decision, right? Under the multitude of facts of this case, yes. It's not wait for an ambulance because you have whiplash in a car accident. Under these facts, it can be conscience-shocking. That's the Taylor case out of the Western District. A child not breathing. Right, but we do have the fact that it's wait for an ambulance, I hear the sirens of the ambulance. Right? I mean, this isn't like, you know, that you hear in some neighborhoods, wait for the ambulance and everyone laughs, the ambulance will be here in an hour and a half. I mean, right? I mean, this is the officers have heard, and I'm saying the fact that it arrived within minutes. It did arrive. The testimony from at least one of the officers was they did hear the ambulance coming. That delay, under the circumstances of somebody, a child not breathing, minutes matter. So that's a very good point. So the question is, you want us to determine that a jury would think it's more reasonable to move the car and let lay people drive to a hospital or other medical facility than it is to wait until an ambulance, which is an earshot, arrives on the scene. Under these facts, a reasonable jury could conclude that. I think I have in my mind what the exact is, but I'd like your answer to it. What's the exact time, as far as we know, that it took between the moment when the officer said, let's wait, I hear the ambulance, and the arrival of the ambulance? Between the time the officer heard the ambulance and it arrived? Yes. There are a multitude of time frames.  Is it reasonable, based on your recollection, and if it's not, you'll tell me, to say that it's between one and two minutes? I believe it was longer than that. It may be. But even when the ambulance arrived, there was nothing they could do for her under those circumstances. This is not a cut, abrasions, a broken leg, a whiplash injury. This is somebody not breathing, unconscious on the sidewalk. They needed to get to the emergency room immediately. All right. Ms. Trockenberry, we'll have you back on rebuttal. Thank you. Ms. Van? Jane Estran for the city. Ms. Van is correct. I know you've been here before, and I'm sorry if I mispronounced that. That's all right, Judge Fisher. Thank you. May it please the Court, Jane Estran for the city and for the individual officers. I guess I'll just start with the issue of the seizure. Do you concede it? The city has made no global concession on the seizure issue. Let me explain. The city has what? We've made no global concession with respect to the seizure issue. We've argued, just as a matter of course, that the district court was correct with the argument that was made to it. We did it with the amplification of the car-blocking argument, which is now front and center on appeal, which wasn't really made to the district court. It was referenced as a matter of fact, but it certainly wasn't made by the plaintiffs. So let me make sure I understand. I read your briefing, and your briefing says, in effect, any seizure that occurred was reasonable. Is it your position that you were not conceding seizure, that you were saying if there were a seizure, it was reasonable? Or did you, as the plaintiffs say, concede that there was a seizure? We did not concede. We're just saying if you assume a seizure in this case, it was reasonable under the facts presented. And we would ask the court to look at the seizure in two stages. First of all, when the officers arrived, pulled in, blocked the car, and got out to investigate, that it's not unreasonable to detain briefly a car full of individuals who are sitting out in front of an address from where a 911 call was made from a person screaming. That's an indeterminate type of emergency. It's okay for the officers to detain those individuals. It's reasonable for them to detain them briefly in order to figure out what the nature of that emergency was. And then the second part of the detention is where the officers said. You sound like you maybe are conceding that that's a seizure, because if you block somebody in, by definition, you're not letting them out, right? The car blocking is something physical. However, again, that's something that wasn't really presented front and center to the district court. But in order for the court not to have to resolve this, to resolve a difficult waiver issue, we'll move on to the reasonableness issue, which we believe is. Is the reasonableness of that under general Fourth Amendment principles, or is it as a result of the community care doctrine? Well, the community care taking exception is a Fourth Amendment concept. It's an exception of probable cause. Even if that doctrine didn't exist per se, if it hadn't been categorized as such. And there is some question as to whether the actual exception applies here. Is your argument still that under these facts, this seizure was reasonable for the period of time that they were prohibited from going off on their own? Yes, for this very brief period. So are you saying that the community care taking exception applies to the entire episode? Yes, because if you look at both situations, in both situations the officers are motivated by their duty to protect, by protection, not by any intention to investigate a crime or to arrest anyone. There's not a sort of motivation to try to arrest someone, to try to investigate a crime. There's no motivation that way. Okay, so it would apply in your view then to all decision making made in the entire episode? Yes, to a certain way. Okay. I mean the community care taking doctrine, I think it's important here. The community care taking doctrine, as I understand it, is an exception to allow the seizure of evidence of criminal activity after officers pursue non-law enforcement errands. That's how it was defined. It's seldom been used. That's a little different than what we have here. I'll bet, Judge Fisher, what we cited in our brief is that it's also been extended by some other circuits into situations where officers have detained individuals in cars, where they've been concerned about their welfare. Have we extended it? This court has not extended it in that manner, but other circuit courts have. Okay, all right. Can I ask you a question? Based on the opening brief from the plaintiff here, it's on page 34. They say that a rule set forth by the district court, that is that a person not able to submit or yield to authority subjectively can never be seized by show of authority leads to absurd results. And then they give several examples, a mother with a child being told you're free to leave your child, that the infant's not consciously capable of yielding, or a mentally ill person, somebody who's mentally infirm. You want to respond to that, that the district court has set up a rule that would lead to real difficulty in circumstances where maybe not because of unconsciousness, but mental disability or incompetency of some sort, you wouldn't be able to yield and you'd have bad results. Well, on its face, because, again, they didn't make the car blocking argument, what you're looking at is a person who really can't express what she wants to do in that situation. And under the Fourth Amendment, it is clear that you can only assert your own rights. You can't assert the rights of another person. But, again, that's a difficult argument. Yeah, that's a different argument. But that was the argument that they presented to the district court. Their argument, as I understand it here before us, is, look, the district court relied on the Sixth Circuit Pete decision. Pete is erroneously decided. It can't be the case that an unconscious person subjectively is the measure. You've got to take it objectively from a reasonable person. I'm just asking you to respond to that argument about Pete, which this series of examples they've given, I think, is related to. Well, in Pete, the argument is that both the mother and the son, I believe, were trying to get to the hospital, and the only restraining that was going on was that the paramedics restrained the plaintiff, and the restraining was what injured the plaintiff, I believe. And there was no restraint, that everyone was showing an attempt to get the individual to the hospital, so there really was no seizure in that sense. So Pete, on its facts, is correctly decided. I don't believe there's any case that talks about a reasonable person standard. But, again, here, I mean, this court doesn't have to get to those difficult issues because we have the reasonableness standard here, and we also have qualified immunity. Let me ask you this about this. I think it's related to this. Do we need to apply the community caretaking exception to extricate the officers from deliberate indifference? And what I mean by that is this. Obviously, the argument made is that every step of the way, there are facts that would ultimately conclude with the notion that deliberate indifference should apply, right, the blocking of the car, the not allowing them to leave, the not attending to them, the not offering help, you know, waiting for the ambulance, that all of that adds up to deliberate indifference. Do we need to apply the community caretaking exception to essentially defeat that argument, or is that just a separate issue that isn't necessary? I have two points on that, Judge Greenway. First of all, the community caretaking exception applies to the fourth amendment analysis, and the deliberate indifference concept is something that's in substantive due process, and I wouldn't concede that deliberate indifference applies. Intent to harm is the standard clearly that applies here because you have a situation where the officers were making a time pressure decision under chaotic circumstances, and they're balancing two really important concerns of trying to determine what, what they think is best for the daughter as they hear the ambulance coming down the street. All of those things clearly determine that an intent to harm standard applies, and there's no indication here that the officers intended to harm, particularly with the time. Mrs. Fienne, as an alternate argument, you said that even if the seizure was unreasonable, that the defendants are entitled to qualified immunity. Yes, Judge Fisher. Okay. And let's assume that we agreed with you on that. Let's assume we got to that and we agreed with you on that, on the basis that the right wasn't clearly established. Where would you be on the Monell claim against the city, which you're also here defending today? Right. Well, there's two Monell claims. What would that do? What would that question do on Monell? There's two Monell claims, and there are independent reasons why they haven't proven either of those. They haven't provided any Monell evidence. There's no proof that there were prior incidents that would have put our policymakers on notice that there was a problem. Well, you don't necessarily have to have a prior incident. You could have a single incident liability. But it's exceedingly rare, Judge Fisher. I mean, the circumstances are you fail to train an officer how to use firearms or in the context of a detention center, you fail to train police, you fail to train your guards how to de-escalate conflicts. Is there any training on this very point with regard to unconscious subjects? There's two claims, Judge Greenway. First of all, there's a claim about a failure to put her into the car and take her to the hospital themselves. And I think the main problem there is that claim isn't even connected to a seizure. There has to be a causal link. And I don't see how a failure to properly train these officers on that would lead them to seize her. It doesn't logically make sense. And then there's also the claim that there's not a proper policy on training officers on how to balance the medical rights of parents. And, again, there's no evidence that our officers have ever had a problem with that. Well, I think it does raise an interesting question here. I mean, that's the difficult question that we're faced on whatever, whether it's a reasonable question, a qualified immunity question, an L question. You know, what is an officer's responsibility? What should they do when they get to a scene similar to this? And has the city adequately prepared them? Even though there haven't been prior claims, has the city adequately prepared officers in a city as big as the city of Philadelphia to respond in a case like this? Our 30B6 witnesses answered, Judge Fischer, that it's something that's highly discretionary and therefore it's very difficult to train for. And this situation shows you there could be a multitude of situations, and this would be one of them where you might have a situation where you have a parent who's ready to take command of the situation or you might have a parent like this who's... And the hospital's nearby. I mean, in this case, the record indicates that Temple Hospital was two minutes away, and I don't know if it was actually two minutes away or what speed it took to make it two minutes away, but it was nearby. But you have a parent in this situation who had actually called for an ambulance and wanted help at the very beginning, and now she's sort of changed her mind and she's panicking and it's difficult to decide whether she's entirely prepared to make the decision herself or you might have a situation where a parent has been resistant from the very beginning but you're questioning whether her child really needs medical care. I mean, there's a multitude of situations. It's the old story. You hear these that cars speeding through a community and get stopped by the police. What are you doing? I'm taking my daughter to the hospital. She's unconscious. Well, wait a minute, but you're going 65 miles an hour. What's the police officer supposed to do there? And is there a need for this kind of training? Is there such a general likelihood of an incident that the city has some responsibility? But I would contend that that's not this case, Judge Fishman. It's not this case. This case is so much more complicated. But I use it just as another example. They hadn't started the transport here. Maybe they had started the transport and the police would say, Wait a minute, what's going on? And I would just cite back to cases like Thomas and City of Canton that talk about them. It has to be plainly obvious for you to not have instituted training on something, and something that's really basic like firearms training, things like that. What would the standard be if we felt that there was a responsibility? Deliberate indifference? For the statutory standard of whether a city is responsible for an underlying constitutional violation. If I could come back for a moment, because I really haven't had a chance to discuss reasonableness, if that's all right. I just wanted to make a couple of points. I didn't get a chance to address sort of the second part of the situation, and that's the part where once the officers had ascertained that there was an emergency here, that it was reasonable for them to require Ms. Vargas to await the imminent arrival of the medical transport. And I wanted to address a couple of things there, because we contend that there are three factors that made the officer's decision eminently reasonable here. First of all, it's the undisputed timing, and as all three of you, I believe, emphasized. What is the timing? The timing here, if you look at the- Ms. Vargas said she couldn't be precise in minutes. Mr. Franklin, their witness, said he felt that the officers were on the scene in total for one to two minutes before the ambulance arrived. The CAD records show that from the time the officers arrived to when fire rescue and the ambulance showed up, which was basically instantaneous, it was about a minute and four seconds, so about over a minute in which the officers had to ascertain what the nature of the emergency was and then hear the ambulance coming down the street. So the timing basically is consistent with their testimony that once they figured out what was going on, they heard an ambulance coming down the street. Therefore, from a reasonableness perspective, it's not a situation where they said, let's wait for the ambulance, help is on the way, and then there was a long delay. They knew there was an ambulance on the way. And the second factor that we wanted to stress is this isn't a situation where they stepped in to take over and make a decision for someone who was obviously equipped to make the call for themselves. We had an unconscious child and we had a woman who was admittedly a mother who was admittedly in a panicked state. And again, this was a person who initially sought our assistance. This is not a case where there have been Fourth Amendment cases where critically ill individuals have resisted medical assistance that's been called for them and that's been held to be a seizure, but that's not the case here. These people wanted medical assistance from the state, and these officers were trying to get it for them. And then third, I just wanted to point out that their decision that Tavissa was better off to have an ambulance be called for her was eminently reasonable. And one thing that Mr. Hockenberry didn't mention is that his own expert endorsed a choice here to wait for an ambulance if there had been ALS on that ambulance, advanced life-saving services. My officers didn't know what was going to show up on that ambulance. They rightfully presumed that ALS would be on that ambulance, and generally it would have been, but in this situation they were out busy. Can I ask you, if my colleagues will indulge me for a minute, I want to make sure I understand the standard that you're arguing for, right? It seems like you've tried to take City of Sacramento v. Lewis, that intent to harm, and insert it into the Monell test. That's where, as the district court pointed out, and as is argued by your opponents here, it's a deliberate indifference standard. Even in your briefing, it looks like you're using the Lewis decision to talk about the officers, not about the city. When we're looking at the Monell liability, are we looking at deliberate indifference? I'm sorry if I'm giving a misimpression, Judge Jordan. My position would be, here where we're talking about reasonableness, obviously Fourth Amendment, we're talking about a reasonableness standard. If we're talking about the Fourteenth Amendment claims with respect to the individual officers, all of those claims would be controlled by the Lewis intent to harm standard because they're constitutional violations. Once we come to the Monell issue, is the city liable for the underlying constitutional violations of the officers, then it's the Monell deliberate indifference standard. Yes. Okay. Yes, I hope my brief was clear on that. I'm clear in my mind. I hope my brief was clear as well. I think it was. Okay. Okay. All right, Ms. Disvan, thank you very much. Thank you, Judge. And we'll have Mr. Hockenberry back on rebuttal. Thank you, Your Honor. So, Mr. Hockenberry, your adversary has said that your witness and one of their witnesses focused the time on being within the time that the police arrived until the arrival of the ambulance was between one and two minutes. So, where to, on the ultimate question of the summary judgment standard that you want us to reverse, right, where to find that a reasonable jury could find with regard to the two constitutional claims and the other two claims that, well, let's start with the Fourth Amendment claim, that it was unreasonable for the officers, after assessing the situation, to say, wait for the ambulance. Correct. Right? Okay. And so, likewise, with regard to the Fourteenth Amendment claim, if I'm understanding that claim correctly, that there was, you agree with your adversary's notion that the key there is the intent to harm? With regard to the Fourteenth Amendment straight claim, it is shocks to conscience. Shocks to conscience. Which the second amendment says intent to harm. Very good. So, shocks to conscience then for our purposes, yes? Shocks to conscience, correct, Your Honor. Anyway, so that we should also find there that a reasonable jury would find that this scenario right before us shocks the conscience. Could shock the conscience, correct, Your Honor? A reasonable jury could. And Ms. Isvan, you know, pointed out that the time frame in waiting for the ambulance is, well, there was sufficient time that the officers themselves testified that they tried to get her in their car. This is more evidence, more material fact that they recognized how serious this situation was. They said, we tried to get her in the car, but she was too fat to fit. So, it's another fact that they recognized how important this was. And I want to address the community caretaking. Because community caretaking, the classic example is there's a red light out at an intersection, and a cop shows up and says, you stop. That's a seizure for Fourth Amendment purposes. Stop your car. It's my show of authority. That's a reasonable, under the community caretaking, to prevent accidents at an intersection. That's the classic example. In the cases she cites, Dombrowski, Winter, these are situations where it's a car accident, or it's a situation where it's a person who is, there's some, appears to be some drug or alcohol or some mental health issue with the person who could be a danger to himself or to others. That is not the situation here. Well, no, the situation here, and I think this is undisputed, is there's a call for assistance. And from the police perspective, the character of the problem is unknown. They arrive on the scene. All the testimony that I saw, and I read quite a bit of it, everybody is acknowledging there's a high degree of emotion. You know, she's unconscious and not breathing. People are in a panic state, and there's yelling. And, frankly, at least one of the police officers was behaving less than you would like an officer of law, swearing at them to get out of the car, et cetera. But there's some commotion while this is sorted out. And then within some relatively short period of time, whether it's 60 seconds or 120 seconds or 180 seconds or 200 and whatever seconds, there's an ambulance heard and an ambulance arriving. It's that sequence where the police arrive, they understand there's a medical emergency that's going on. How is it that the notion, and you've used a good example, a cop in the street says stop to prevent a further accident or worse accident from happening. How is this different or not analogous to a police officer saying to the people on the scene, the panicked people on the scene, stop, there's an ambulance I can hear, let's let the professionals take care of that. Because the police officers have then, and this would be a sweeping expansion of officers' rights, can use the community caretaking doctrine to substitute in any medical emergency situation their judgment for the judgment of the person or the person's parent or guardian. Because the cops could have said, we think there's pediatricians at CHOP that treat asthma, so we don't even want you to go to Temple Ambulance. We're going to call another ambulance that's going to come straight from CHOP. That opens up a whole. That is the question I asked you earlier in whether or not you were asking us to create a dichotomy between the exercise of the officer's judgment and a parent's judgment. I'm sorry, I misunderstood. I thought I understood what you just said to be that, you know, if we extend the community caretaking exception to this situation, that's what we'd be doing. We'd be allowing officers to exercise that judgment and contravention of a parent. And if that's where you think the dichotomy lies and that's where you want us to rule, I'm concerned. So am I misunderstanding you, or is that your point, that when that dichotomy exists, we should not be essentially protecting the exercise of discretion by officers? In this situation, that's correct, Your Honor. This is not a criminal situation. This is not a fleeing felon. This is not a car chase. This is a medical emergency where somebody's child is having an asthma attack. The parental right to control what treatment she does receive and where she goes to get it is hers. And I think that that is very clear. Now, you made that argument in your 14th Amendment claim, but did you make that argument on the Fourth Amendment claim? The Fourth Amendment claim is a straight seizure claim. It's the 14th Amendment claim, Your Honor. But did you make that argument as to the reasonableness? Did you make that argument as one of the ways in which we should declare this seizure unreasonable? Yes. There are a multitude of factors why this seizure is unreasonable. It is the fact that the parents' right being paramount to the police officer's right, one of those factors. That is one of the factors. And did you raise that in your brief? Under the Fourth Amendment argument of my brief, I do not know if it's listed there. It's certainly listed under the 14th Amendment argument. Under the 14th. That's all I'm trying to get to. Correct. That would be a fact, Your Honor. All right. Well, thank you. Thank you, Your Honor. We thank both counsel for a case that was very well briefed and very well reviewed. And we will take the matter under advisement.